IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APL CO. PTE. LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No: 05-850(SLR) |
| | : | |
| UNITED SUPPLY CO. LTD., | : | |
| | : | |
| and | : | |
| | : | |
| A cargo of 1700 Cartons of Frozen Shrimp Transported from Khulna, Bangladesh to South Kearny, New Jersey, pursuant to Bill of Lading No. APLU-054094784 dated September 25, 2005, *in rem*, | : | |
| | : | |
| Defendants. | : | |

**OPPOSITION OF APL CO. PTE. LTD. TO DEFENDANT'S
MOTION TO DISSOLVE SECURITY AND DISMISS PLAINTIFF'S COMPLAINT**

Defendant United Supply Co., Inc., ("United") has filed a motion to dissolve the security it posted for the release of the *in rem* defendant Cargo of 1700 Cartons of Frozen Shrimp, etc., (the "Cargo") and to dismiss the complaint of plaintiff APL Co. Pte. Ltd. ("APL"). United's sole basis for its motion is its erroneous contention that it has the only claim to the Cargo and that the action is moot as a result. Defendant's motion is without merit and must be denied for several reasons.

**INTRODUCTION**

This matter is before this Court because United removed the Cargo from APL's storage facility in New Jersey and transported it to Delaware. APL arrested the Cargo in Delaware upon discovering that the party holding title to it through a negotiated Bill of Lading was Southern Foods USA, Inc. ("Southern") and that APL had allowed United to take delivery in error. Southern has filed a claim in this action seeking the delivery of the Cargo to it by APL.

However, the Court granted United's request, over APL's objection, to post security for the Cargo's release to United. The Cargo has now been replaced by this security in the form of an irrevocable standby letter of credit for $200,000, which names APL as the beneficiary. The letter of credit (or its proceeds) is now, in all respects, the *res* at issue and in the custody of this Court. APL seeks an Order from this Court permitting APL to draw upon the letter of credit to satisfy Southern's claim to the Cargo, which essentially has been transformed into a monetary claim against the *res* for the Cargo's resale value plus interest and costs.

## ARGUMENT

### I. Southern has not withdrawn its claim to the *res* in this matter.

The Background stated in United's motion is partially correct, though one essential element is missing. Following the telephone conference with the Court, counsel for Southern advised APL that Southern would not withdraw its claim to the *res* in this action. A review of the docket will reveal that Southern has not withdrawn from this action and remains a claimant to the *res*.

### II. APL has an independent claim for possession of the *res*.

United erroneously argues APL has no claim to the *res* and has merely asserted a claim on behalf of Southern. APL's claim, as stated in its complaint, falls squarely within the express language of Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule D"):

> **In all actions for possession,** partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, **in all actions so maintainable with respect to the possession of cargo or other maritime property**, and all actions by one or more part owners against others to obtain security for the return of the vessel from any voyage undertaken without their consent, or by one or more part owners against the others to obtain possession of the vessel for any voyage on giving security for its safe return, **the process shall**

> **be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties.**

*Id.* (emphasis added).

Rule D governs an action in which the plaintiff asserts that it is either the title owner of property or is legally the rightful possessor of the property. A right of possession can arise from facts or circumstances other than title ownership. In the instant case, APL was the ocean carrier of the Cargo under an ocean Bill of Lading it issued. As the carrier, APL is the legal possessor of the Cargo until delivery to the holder of the Bill of Lading.[1] Furthermore, under the Bill of Lading, APL has a duty to deliver the goods to the proper consignee. The Bill of Lading to Southern is the only duly negotiated Bill of Lading surrendered to APL covering the Cargo. (Bill of Lading, Exhibit APL-2 in evidence).

Although subject to this Court's jurisdiction and Order to Show Cause, United did not appear at the hearing held on December 21, 2005, to offer evidence of its ownership or right to possession of the Cargo. Disregarding this Court's Order, United caused its counsel specially to appear only on behalf of the Cargo for the sole purpose of contesting its arrest. At this hearing, Marilyn Kennedy[2] of APL testified that the original Bills of Lading issued to United had been returned to APL for cancellation after United refused to pay the shipper. Specifically, the shipper's bank requested the return of the un-negotiated Bills of Lading from United's bank and forwarded them to APL upon receipt. Thus, the clear and unrebutted evidence of record establishes that the only extant Bill of Lading was the one the shipper negotiated to Southern and Southern delivered to APL. Southern, as holder of the Bill of Lading and consignee of the

---

[1] A Bill of Lading is a negotiable instrument which is also a document of title. See Article 7 of the Uniform Commercial Code. The Pomerene Bills of Lading Act, 49 U.S.C. §§81-124 also defines Bills of Lading as documents of title (although it would not be applicable to this matter as it applies to shipments originating in the United States).

[2] Transcript of hearing, December 21, 2005, pages 62-65.

Cargo, has title to the Cargo and APL, as the ocean carrier which has not yet made delivery to the consignee, is the legal possessor of the Cargo (or of the Cargo's substitute *res*).

*Evergreen Marine Corp. v. 6 Consignments of Frozen Scallops*, 4 F.3d 90 (1st Circuit 1993), discussed at oral argument on December 21, 2005, is entirely on point. That case involved a notify party ("Gloucester") which had not paid for a cargo of scallops. By falsely representing it had made payment under the Bill of Lading, Gloucester obtained delivery of the cargo from the ocean carrier ("Evergreen"). After obtaining possession of the cargo, Gloucester became insolvent. A bank holding a U.C.C. Article 9 security interest granted by Gloucester then took possession of the scallops. Subsequently, the holder in due course of the Bill of Lading (another bank) demanded possession of the cargo from Evergreen. Evergreen, of course, could not deliver the cargo since it had already released the cargo to Gloucester. Therefore, Evergreen demanded return of the cargo from Gloucester and its secured party. The request was refused and Evergreen brought suit against the *res*, i.e., the cargo of scallops.

The District Court, and ultimately the Court of Appeals, had to determine which of the two competing banks had the right to possession of and ownership of the *res*. The District Court analogized the delivery of the goods by Evergreen as a sale of goods and denied Evergreen possession of the *res*. In reversing the District Court, the Court of Appeals held that an ocean carrier's possession of the goods is not akin to a sale but rather a bailment. Under the circumstances, the holder of the bill of lading took priority over the secured party for possession of the *res*.

From the perspective of Evergreen, it would have to pay the holder of the bill of lading the full value of the cargo if the Article 9 secured party prevailed. The position of Evergreen is directly analogous to that of APL in this case, having delivered the cargo by mistake to a party

4

which had not paid for it. United is the same as Gloucester, having obtained possession of the cargo for which it has not paid. Southern, which has paid its bank and held the valid fully negotiated Bill of Lading, is in the same position as the bank that held the Bill of Lading in *Evergreen Marine*.

If the holder in due course of a bill of lading is awarded title over the claim of an innocent secured third party under the circumstances before the court in *Evergreen Marine*, then the holder of the Bill of Lading in this case, Southern, should be awarded title over United which has obtained possession purely by mistake. When given the chance, United refused to pay for the Cargo and take up the Bills of Lading. When it erroneously obtained possession of the Cargo from APL, it refused to return it upon APL's demand and converted it to its own use. Through *Evergreen Marine*, APL should be awarded possession of the *res* (or its substitute, the letter of credit proceeds) in order to deliver it to Southern which holds title. United has neither title nor a right to possession.

### III. United's comparison of this matter to an Interpleader is incorrect.

United's analogy of this action to an Interpleader in which one of two competing parties withdraws its claim is inappropriate. APL did not deposit the *res* with this Court for a declaration of ownership. If APL had possession of the *res* it simply would have delivered it to Southern pursuant to Southern's Bill of Lading. To the contrary, APL arrested the cargo pursuant to Rule D, resulting in the claims for ownership by United and Southern. In addition, even if Southern had withdrawn its claim, which it has not, the issue of the right of possession of the *res* between APL and United would still be pending as discussed above. Thus, the cases relied upon by United in which a claimant in an Interpleader action has withdrawn its claim have no applicability to this matter.

### IV. APL's claims are not limited to indemnity from United.

United's last argument is that APL's complaint pursues what is, in effect, a claim for indemnity in advance of a claim by Southern for damages. Although APL must concede that it is concerned about the potential of its liability to Southern in the event that the substitute *res* is not awarded to APL for delivery to Southern, APL does not agree that it is merely prosecuting an indemnity claim in this proceeding.

Pursuant to this Court's Supplemental Jurisdiction under 28 U.S.C. §1367, APL's complaint also sought a Writ of Replevin under Delaware law along with the Warrant for Arrest of the Cargo. Because the Warrant for Arrest was served on the *res*, this Court has never addressed the Writ of Replevin or the Replevin count of the complaint. There has, to date, been no need to do so. However, as United has moved to dismiss on the basis that there is no claim before the Court which constitutes a case or controversy under Article III of the Constitution, APL's Replevin claim should be considered by this Court.

The requirements of the Delaware Code for a Writ of Replevin are set forth in APL's Memorandum (Docket No. 13) and revised Memorandum in Support of the Order to Show Cause (Docket No. 22). APL sets forth the requirements of 10 Del. C. § 3905 in Point V of APL's revised Memorandum (p.7). In Point II of the Memorandum (p. 4), APL quotes *Liafail, Inc. v. Learning 2000*, 2002 U.S. Dist. LEXIS 22620 at *31 (D. Del., Nov. 25, 2002) on the definition of conversion as being the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it." There is no question that United has maintained possession, control and dominion over property to which it has no title or right of possession. This possession constitutes a conversion. Indeed, when APL sought to post security to obtain possession of the cargo for delivery to Southern, United objected to the release of the

cargo on security, constructively maintaining its obstruction of APL's and Southern's rights and thus continuing its conversion.  Under 10 Del. C. §3905, a party, such as APL, which is denied its right of possession of property may apply for a Writ of Replevin to recover such property pending the Court's determination of its superior right of possession.  APL's right to possession of the *res* is superior to that of United, which has no right at all.

More fundamentally, however, in Count I of the complaint, APL has sought possession of the *res* based on its maritime law rights.  United has substituted the letter of credit for the Cargo.  The letter of credit (or its proceeds) now represents the *res* in the custody of this court.  There is a case and a controversy under maritime law as to which of two parties has the legal right to possession and control of that *res*.  It is not money, per se, which is at issue.  APL does not seek recovery of $200,000 as indemnity for damages it might owe to Southern.  Rather, the $200,000 Letter of Credit, and the right to draw thereon, is the very *res* which is the subject of the arrest, the controversy over the right of possession, and the Replevin action.  With or without Southern, which is still a party to this action by virtue of its claim to the *res*, there is a case and a controversy before this Court.

## CONCLUSION

For the reasons stated herein, United's motion to dissolve the security and dismiss the complaint should be denied.  The trial in this matter should be held as scheduled.

        HOLLSTEIN KEATING CATTELL
        JOHNSON & GOLDSTEIN P.C.

By:    /s/ Lynne M. Parker
        Lynne M. Parker
        1201 North Orange Street, Suite 730
        Wilmington, DE 19801
        (302) 884-6700
        (302) 573-2507 (Fax)
        lparker@hollsteinkeating.com
        Attorneys for Plaintiff APL Co. Pte, Ltd.

Dated: April 4, 2006

315178.1{1042.00012:EVC2951}