IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APL CO. PTE LTD,                              :
                                             :
                        Plaintiff,           :
                                             :
        -v.                                  :        Civil Action No: 05-850 (SLR)
                                             :
UNITED SUPPLY CO. LTD.,                       :
                                             :
        and                                  :
                                             :
A Cargo of 1700 Cartons of Frozen Shrimp     :
Transported from Khulna, Bangladesh to       :
South Kearny, New Jersey, pursuant to Bill   :
of Lading No. APLU-054094784 dated           :
September 25, 2005, *in rem*,                :
                                             :
                        Defendants.          :

## PRETRIAL ORDER

**1.    A statement of the nature of the action, the pleadings in which the issues are raised and whether counterclaims, cross-claims, etc., are involved.**

This is an action by plaintiff APL Co. Pte Ltd ("APL") to regain possession of 1700 cartons of frozen shrimp delivered to defendant United Supply Co., Inc. ("United"), allegedly in error, for the purpose of turning it over to claimant Southern Foods USA, Inc. ("Southern").   United Counterclaims against APL for damages arising out of the arrest of the shrimp.

**A.    APL's Verified Complaint.**

APL commenced this action by filing a Verified Complaint on December 8, 2005 against United and A Cargo of 1700 Cartons of Frozen Shrimp Transport from Khulna, Bangladesh to South Kearny, New Jersey, pursuant to Bill of Lading[1] No. APLU-

---

[1] APL issues three (3) original bills of lading as a matter of course and practice.  For simplicity, APL shall refer to this set of three originals as a "bill of lading" in the singular.

054094784 dated September 25, 2005, *in rem*. APL alleged that it received an endorsed negotiable bill of lading for the cargo from Southern, but turned the cargo over to United in error. APL further alleged that upon discovering the error, APL demanded that United return the cargo for delivery to the actual holder of the bill of lading, but United refused, resulting in a claim by Southern against APL for the value of the cargo, alleged to be $176,800.

APL pled counts for relief pursuant to Supplemental Rule D for Certain Admiralty and Maritime Claims of the Fed. R. Civ. P. ("Rule D"), replevin pursuant to 10 Del. C. § 3905, and conversion. APL demanded that the cargo be arrested by the Marshal and turned over to APL pursuant to Fed. R. Civ. P. 64, Rule D and/or 10 Del. C. § 3905. APL also demanded that it be awarded damages for United's alleged conversion of the cargo.

### B.    United's Answer with Counterclaim.

United filed an Answer with Counterclaim in its own right and as an alleged assignee of Sea Harvest Food Company on January 3, 2006. United admitted it accepted delivery of the goods from APL and declined to return the goods upon demand by APL, but denied the remainder of APL's allegations. United raised eight Affirmative Defenses: (1) failure to state a claim within this Court's admiralty and maritime jurisdiction, (2) failure to state a claim upon which relief can be granted, (3) APL is not the real party in interest, (4) lack of standing, (5) failure to join an indispensable party, (6) accord and satisfaction, (7) estoppel, waiver and/or laches and (8) misconduct, fraud or illegality.

United's Counterclaim alleged that the shipper of the goods, Shampa Ice & Cold Storage, Ltd. ("Shampa") agreed to provide the goods to United as a substitute for a previously shipped shrimp alleged to have been rejected by the FDA. United alleged that APL issued a bill of lading for the goods naming United as notify party, that United incurred various expenses for the goods' transport, and that United properly took delivery of the goods from APL. United further alleged that while the goods were in transit, APL wrongfully issued a second set of bills of lading for the goods and thereafter wrongfully caused the issuance of the Warrant of Arrest resulting in the goods' seizure by the Marshal.

United pled counts for conversion, trespass to chattels, interference with business relations with Shampa, and interference with business relations with its customer, the Albertsons/Acme supermarket chain. United demanded damages equivalent to the value of the goods, consequential damages, punitive damages and attorneys' fees and costs.

### C.    APL's Answer to United's Counterclaim.

APL filed an Answer to United's Counterclaim on January 9, 2006. APL admitted that, pursuant to the instructions of Shampa, it issued a negotiable bill of lading requiring payment for the cargo that designated United as notify party. APL further admitted that, pursuant to subsequent instructions, it issued a substitute set of bills of lading for the cargo. APL further answered that United knew it had not paid for the cargo and that the bill of lading designating United as notify party had been returned to APL unendorsed by United or its bank. APL denied the remainder of United's allegations.

APL also raised eight Affirmative Defenses: (1) failure to state a claim for punitive damages under admiralty and maritime law; (2) failure to state a claim for

punitive damages under Delaware law; (3) failure to state a claim upon which relief can be granted; (4) lack of standing to assert a claim to the cargo by not being the holder of a bill of lading; (5) waiver of any right, title or interest in the cargo by having refused to take up a bill of lading and pay for the cargo; (6) failure to mitigate damages; (7) unclean hands, estoppel and waiver; and (8) misconduct, fraud or illegality.

> **D.    Southern's Answer and Claim.**

Southern filed an Answer and Claim on March 8, 2006.  In its Answer, Southern admitted all of APL's allegations in the Verified Complaint with the exception of the identity of United (to which Southern pled insufficient knowledge) and the amount of damages, as the claim of $176,800 Southern submitted to APL did not include interest and costs.

In its Claim, Southern alleged it paid $176,800 for the cargo, it is the holder of an endorsed bill of lading for the cargo, it submitted an endorsed bill of lading for the cargo to APL, its commercial contracts cannot be honored without delivery of the cargo, its claim to APL does not account for interest, legal fees and damages for loss of business and reputation, and it is not at fault or negligent.

Southern demanded that the cargo be returned to the possession of APL pursuant to Fed. R. Civ. P. 64, Rule D and/or 10 <u>Del</u>. <u>C</u>. § 3905 and that United be assessed damages for its alleged conversion of the cargo.


> **2.    The constitutional or statutory basis of federal jurisdiction, together with a brief statement of the facts supporting such jurisdiction.**

APL contends its Verified Complaint invokes this Court's jurisdiction under 28 U.S.C. § 1333, as this is an admiralty action within the meaning of Rule 9(h) of the Fed.

R. Civ. P. The specific relief requested was the arrest of the cargo pursuant to Rule D. This Rule D action seeks to determine which party, as between APL, United and Southern has the legal right to possession of the cargo which APL contends is still covered by an ocean bill of lading issued by APL.

Further, APL contends the Verified Complaint invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332 to hear the Delaware state law replevin and conversion claims pursuant to the provisions of 10 <u>Del</u>. <u>C</u>. § 3905 and Fed. R. Civ. P. 64, which governs procedure for the seizure of property in an action under state law under this Court's supplementary jurisdiction as provided in 28 U.S.C. § 1367(a).

United believes the Rule D arrest was invalid as a matter of law, because, among other things, none of APL's claims fall within the admiralty and maritime jurisdiction of the Court. United's motion to vacate the arrest for lack of admiralty jurisdiction (D.I. 24) remains pending.

APL is a corporation existing under the laws of and maintaining a principal place of business in Singapore. United is a corporation existing under the laws of Kansas with a principal place of business in Kansas City, Missouri.

**3.     A statement of facts which are admitted and require no proof.**

The parties are unable to agree upon a statement of facts which are admitted and require no proof.

**4.    A statement of the issues of fact which any party contends remain to be litigated.**

4.1    Whether APL's office in Bangladesh understood it was required by local law and trade practice and/or justified to issue substitute bills of lading on the joint instructions of the shipper, Shampa, and the bank to whose order the cargo was consigned, Sonali Bank, and in reliance on Sonali Bank's undertaking to return the previous bill of lading?  United objects to this being listed as a statement of fact to be litigated in light of APL's failure to give any notice under Fed. R. Civ. P. 44.1 or offer any proof of foreign law through competent evidence.

4.2    Whether APL's delivery of the cargo[2] to United was a mistake made in good faith?

4.3    Whether United knew it did not pay for the cargo, did not hold a bill of lading for the Cargo, did not have title to the cargo and, therefore, had no legal basis on which to take delivery or retain possession of the cargo?

4.4    Whether United took the goods from APL knowing it had not paid for the cargo and had no endorsed bill of lading?

4.5    Whether APL should regain possession of the cargo, or the cash proceeds of the letter of credit, which stands as a substitute *res* for the cargo, and pay those proceeds over to Southern in full satisfaction of its obligations under the bill of lading tendered by Southern to APL?

---

[2] United believes the goods ceased to be "cargo" upon release from APL's terminal.  APL believes the goods remained "cargo" as it contends the goods remain covered by the bill of lading naming Southern as notify party.

4.6    Whether APL's alleged mistake in turning the cargo over to United and its attempt to rectify that mistake by bringing this law suit did not cause any injury to United, who was not entitled to delivery of the cargo in the first place?

4.7    Whether APL's alleged mistake in turning the cargo over to United did not cause any injury to Southern because, immediately upon discovery of its mistake, and within three days after the cargo had been taken by United, APL sought to obtain the voluntary return of the Cargo from United and commenced this law suit when United refused?

4.8    Whether if Southern sustained any legally cognizable injury, it was caused by United's taking away a cargo for which it had not paid, for which it did not hold an endorsed bill of lading or title, and which it refused to return, thereby necessitating this law suit?

4.9    Whether Southern gave bona fide value for the second set of bills of lading?

4.10    Whether the second set of bills of lading was duly negotiated to Southern?


**5.    A statement of the issues of law which any party contends remain to be litigated, and a citation of authorities relied upon by each party.**

**APL's Issues of Law:**

5.1    Which of the Parties, as between APL and United, has the legal right to possession of the cargo, now in the form of the *res*, the letter of credit?  *Evergreen Marine Corp. v. 6 Consignments of Frozen Scallops*, 4 F.3d 90 (1st Circuit 1993); *Allied Chemical International Corp., v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d

476 (S.D.N.Y. 1985); *In re Markel*, 254 A.2d 236 (Del. 1969); *Taylor v. Snyder*, 741 A.2d 17 (Del. 1999); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* 620 (4th ed. 2004); 49 U.S.C.S. § 80111(b)(3)(A) & (B); 6 Del. C. § 7-404; Fed.R.Civ.P. 64; and 10 Del. C. § 3905.  (United objects to the use of the term "cargo").

5.2    Which of the parties, as between United and Southern, has title to the cargo, now in the form of the *res*, the letter of credit?  *Evergreen, supra.*; *Allied*, *supra*; 6 Del. C., § 7-502; N.J. Stat. § 12A:7-502; and 49 U.S.C.S. § 80111(b)(3)(A) & (B). (United objects to the use of the term "cargo").

5.3    Whether the holder in due course of a duly negotiated bill of lading is the legal owner of property defeating the competing claims of a party in possession of such property who did not take up the bill of lading and refused to pay for the property? *Evergreen, supra.*; *Allied*, *supra*; 6 Del. C. §§ 1-201, 7-502; N.J. Stat. §§ 12A:7-502; 49 U.S.C.S. § 80111(b)(3)(A) & (B); and 1 Saul Sorkin, *Goods in Transit* § 2.07[1] (2005).

5.4    Whether this Court should grant APL it's requested relief under the Delaware state replevin law, 10 Del. C. § 3905, upholding APL's legal right of possession of the cargo, now in the form of the letter of credit?  Fed.R.Civ.P. 64; *In re Markel*, 254 A.2d 236, 239 (Del. 1969); and *Taylor v. Snyder*, 741 A.2d 17 (Del. 1999). (United objects to the use of the term "cargo").

5.5    Whether United is liable to APL for APL's damages arising out of its conversion of the cargo, should the court find that APL, and not United, has the legal right to possession and United has withheld the cargo in derogation of APL's rights? *Liafail, Inc. v. Learning 2000*, No's 01-599 and 01-678, 2002 U.S. Dist. LEXIS 22620 at *31 (D. Del., Nov. 25, 2002); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 165 (D. Del.

2001); and *Arnold v. Society for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996). (United objects to the use of the term "cargo").

5.6    Whether APL's damages for conversion include legal fees and costs it has incurred in this matter?  *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962); *Acierno v. Goldstein*, No. 20056-NC, 2005 Del. Ch. LEXIS 176, *7 (Del. Ch., Nov. 16, 2005); *Rice v. Ferro*, No. 401-S, 2004 Del. Ch. LEXIS 99 (Del. Ch., Jul. 12, 2004); and 28 U.S.C. §1927.

**United's Issues of Law:**

5.8    Whether the second set of bills of lading, backdated and issued while the first set was outstanding, was void *ab initio* under 6 <u>Del</u>. <u>C</u>. § 7-402.

5.9    Whether APL is liable, under 6 <u>Del</u>. <u>C</u>. § 7-402, for all damages caused by its issuance of a backdated second set of bills of lading.


**6.    A list of pre-marked exhibits, including designations of interrogatories and answers thereto, requests for admissions and responses, which each party intends to offer at the trial with a specification of those which will be admitted in evidence without objection, those that will be objected to and the Federal Rule of Evidence in support of said objection and the Federal Rule of Evidence relied upon by the proponent of the exhibit.**

**APL's Proposed Exhibits**

6.1    **APL-1**

This Exhibit was previously admitted by the Court at the December 21, 2005, hearing.  The relevant pages have since been Bates Stamped APL 352 – 360.  The Exhibit consists of:

(a)    The 3rd Original bill of lading retained by Southern (APL 352-353);

(b)    Purchase Order between Southern and Shampa dated July 28, 2005 (APL 354);

(c)    New York Customs Brokers invoice to Southern dated October 28, 2005 (APL 355);

(d)    U.S. Customs Entry Summary to New York Customs Brokers dated November 10, 2005 (APL 356);

(e)    Funds Transfer Payment Order Receipt to Southern dated October 27, 2005 (APL 357)

(f)    G-Trac U.S. Customs Release to Southern dated November 15, 2005 (APL 358)

(g)    Purchase Order from Bonoful Fish to Southern dated October 17, 2005 (APL 359); and,

(h)    Commercial Invoice from Shampa to Southern dated July 30, 2005 (APL 360).

6.2    **APL-2**

The 1st, 2nd, and 3rd Original bills of lading naming United as notify party endorsed by Sonali to Gold Bank, but with Gold Bank's endorsement stamp crossed out (APL 363 – APL 368).

6.3    **APL-3**

The letter from Shampa to Sonali Bank, copied to APL, dated October 24, 2005 requesting the issuance of substitute bills of lading naming Southern as notify party (APL 10).

6.4    **APL-4**

The letter from Sonali Bank to APL dated October 24, 2005 requesting the issuance of substitute bills of lading naming Southern as notify party and undertaking to return the previous bills of lading naming United as notify party (APL 11).

6.5    **APL-5**

The 1st Original bill of lading naming Southern as notify party endorsed by Sonali Bank and signed by Southern (APL 363 – 364).

6.6    **APL-6**

The file of Gold Bank concerning the transaction at issue with United (GB 1 – 36).  The Exhibit consists of:

(a)     The Subpoena to Gold Bank (BG 36);

(b)     The original letter of credit to United (GB 1 - 3);

(c)     Amendments to the letter of credit (GB 4 – 5);

(d)     Documents forwarded to Gold Bank by Sonali Bank:

    (1)     Cover letter with transaction details dated September 26, 2005 and stamped "received" on October 4, 2005 (GB 25);

    (2)     Commercial Invoice from Shampa to United dated July 30, 2005 (GB 26);

    (3)     Copy of the 1st Original bill of lading naming United as notify party (GB 27);

    (4)     Bill of Exchange from Shampa dated August 4, 2005 (GB 28);

(e)     Letters from Gold Bank to United inquiring if United will waive the discrepancies in the survey and quality control reports so payment may be effected (GB 24 – 25);

(f)     Swift messages from Sonali Bank to Gold Bank dated October 11 & 12, 2005 requesting confirmation of payment (GB 20);

(g)     Swift message from Gold Bank to Sonali Bank dated October 12, 2005 stating that the documents are being held unpaid due to discrepancies in the survey and quality control reports (GB 19);

(h)     Hand-written notes of Gold Bank (GB 22);

(i)     Swift messages from Sonali Bank to Gold Bank dated October 18, 19, 24, 27 & 31 requesting the return of the transaction documents and with hand-written notes by Gold Bank (GB 29, 18, 17, 16 & 15, respectively);

(j)     Swift message from Gold Bank to Sonali bank dated October 31, 2005 stating it has approached United for a waiver of the discrepancies and is waiting for United's approval (GB 14);

(k)     Swift message from Sonali Bank to Gold Bank date November 22, 2005, claiming Gold Bank is in violation of applicable law for not

returning the requested transaction documents and demanding payment based upon information from Shampa that United has taken possession of the cargo (GB 13);

(l)     Letter from Gold Bank to Sonali Bank dated November 22, 2005 returning the transaction documents, including the 1st, 2nd and 3rd Original bills of lading naming United as notify party with the endorsement stamp of Gold Bank crossed out (GB 8 – 11; GB 30 – 35);

(m)     Swift message from Gold Bank to Sonali Bank dated November 23, 2005 stating the transaction documents were returned by letter dated November 22, 2005 due to discrepancies with the survey and quality control reports and refusal by United (GB 7)

6.7    **APL-7**

APL Equipment Interchange Receipt dated November 18, 2005 for United's removal of the cargo from APL's South Kearny, NJ, terminal. (APL 62)

6.8    **APL-8**

Email from Sara Klementis to Donald Daviner reporting a telephone call with Peter Li of United during which Mr. Li represented he had all three original bills of lading naming United as notify party. (APL 318)

6.9    **APL-9**

Shipment/BL Notes Display Screen printout from APL's computer database (APL 35 – 49).

6.10    **APL-10**

Equipment History Report for the container transporting the cargo (APL 54 – 61).

United objects to the admission of the foregoing exhibits on the basis of hearsay and irrelevance.

**United's Proposed Exhibits**

6.11    **US-1**

1st Original Bill of Lading APLU-054094784 (APL 01-03)

No objection.

6.12    **US-2**

Proof Read Copy Bill of Lading APLU-054094784 (APL 04)

No objection.

6.13    **US-3**

Proof Read Copy Bill of Lading APLU-054094784 (APL 05)

No objection.

6.14    **US-4**

Flegenheimer Delivery Order (APL 9)

Objection to authenticity pursuant to F.R.E. 901 and relevance pursuant to F.R.E. 401-102.

6.15    **US-5**

Flegenheimer CAD Request (APL 22)

Objection to relevance pursuant to F.R.E. 401-102.

6.16    **US-6**

APL Emails re Diversion (APL 23-25)

No objection.

6.17    **US-7**

APL Emails re CAD Update (APL 26)

Objection to relevance pursuant to F.R.E. 401-102.

6.18    **US-8**

APL Emails re Inbond Intransit (APL 28)

Objection to relevance pursuant to F.R.E. 401-102.

6.19    **US-9**

APL Shipment Summary Information (APL 29)

No objection.

6.20    **US-10**

APL BL Notes Display (APL 35-49)

No objection.

6.21    **US-11**

Equipment History Report (APL 54-61)

No objection.

6.22    **US-12**

APL Service Contract EB05/0160 (APL 67-110)

Objection to relevance pursuant to F.R.E. 401-102.

6.23    **US-13**

Email from Zakir Hossain to D. Daviner (APL 112)

Objection to relevance pursuant to F.R.E. 401-102.

6.24    **US-14**

Correspondence between Zakir Hossain and S.M. Amzad Hossain (APL 121-122)
Objection to relevance pursuant to F.R.E. 401-102.

6.25    **US-15**

Letter from Shampa to APL (APL 123)

Objection to relevance pursuant to F.R.E. 401-102.

6.25    **US-16**

APL Emails (APL 130-134)

Objection to relevance pursuant to F.R.E. 401-102.

6.26   **US-17**

APL Email (APL 135)

Objection to relevance pursuant to F.R.E. 401-102.

6.27   **US-18**

APL Email (APL 138)

Objection to relevance pursuant to F.R.E. 401-102.

6.28   **US-19**

APL Email (APL 147)

Objection to relevance pursuant to F.R.E. 401-102.

6.29   **US-20**

APL Email (APL 157)

Objection to relevance pursuant to F.R.E. 401-102.

6.30   **US-21**

APL Email (APL 207-209)

Objection to relevance pursuant to F.R.E. 401-102.

6.31   **US-22**

APL Email (APL 211-214)

Objection to relevance pursuant to F.R.E. 401-102.

6.32   **US-23**

APL Email (APL 240-242)

Objection to relevance pursuant to F.R.E. 401-102.

6.33    **US-24**

Email from Matthew James, Esq. to Zakir Hossain (APL 319-320)

Objection to relevance pursuant to F.R.E. 401-102.

6.34    **US-25**

Messages from Khan Habibur Rahmari to APL (APL 321-323)

No objection.

6.35    **US-26**

Email from Matthew James, Esq. to Zakir Hossain (APL 327-328)

Objection to relevance pursuant to F.R.E. 401-102.

6.36    **US-27**

Letter from S.K. Lee to Eric R. Swett, Esq. (APL 331)

No objection.

6.37    **US-28**

Message from Mohammad B. Chowdhury to APL (APL 336)

Objection to relevance pursuant to F.R.E. 401-102.

6.38    **US-29**

Letter from Eric R. Swett, Esq. to S.K. Lee (APL 337)

No objection.

6.39    **US-30**

Email from APL to Zakir Hossain (APL 342-345)

No objection.

6.40    **US-31**

Email from Zakir Hossain to APL (APL 346-347)

No objection.

6.41    **US-32**

APL Customs Activity (APL 349)

No objection.

6.42    **US-33**

APL Directory of Active Customers (APL 370-374)

Objection to relevance pursuant to F.R.E. 401-102.

6.43    **US-34**

APL Notes Display (APL 375-384)

Objection to relevance pursuant to F.R.E. 401-102.

6.44    **US-35**

APL Equipment History Report (APL 385-392)

Objection to relevance pursuant to F.R.E. 401-102.

6.45    **US-36**

APL Cargo Release Policy (APL 397-405)

Objection to relevance pursuant to F.R.E. 401-102.

6.46    **US-37**

APL Documentation Reference Manual - Standards and Controls (APL 407-417)
Objection to relevance pursuant to F.R.E. 401-102.

6.47    **US-38**

APL Receivables Policy and Process (APL 420(a)-478)

Objection to relevance pursuant to F.R.E. 401-102.

6.48    **US-39**

APL Documentation Reference Manual - Bill of Lading Type (APL 479-502)

Objection to relevance pursuant to F.R.E. 401-102.

6.49    **US-40**

APL Letter to Shampa (APL 504)

Objection to relevance pursuant to F.R.E. 401-102.

6.50    **US-41**

Shampa Letter to APL re Diversion (APL 505)

No objection.

6.51    **US-42**

Letter from Amjad Hossain to APL (APL 506)

Objection to relevance pursuant to F.R.E. 401-102.

6.52    **US-43**

Letter from Sonali Bank to APL (APL 509)

No objection.

6.53    **US-44**

Letter from Shampa to APL re Delivery (APL 510)

No objection.

6.54    **US-45**

Letter from Shampa to APL re Stoppage in Singapore (APL 511)

Objection to relevance pursuant to F.R.E. 401-102.

6.55    **US-46**

Shampa Commercial Invoice (US 01)

Objection to authenticity pursuant to F.R.E. 901.

6.54    **US-47**

1st Original Bill of Lading APLU-054094654 (US 02)

No objection.

6.55    **US-48**

Gold Bank SWIFT to Sonali (US 03)

Objection to authenticity pursuant to F.R.E. 901 and relevance pursuant to F.R.E. 401-403.

6.56    **US-49**

United Purchase Order (US 04)

Objection to authenticity pursuant to F.R.E. 901.

6.57    **US-50**

Shrimp Exporters Declaration (US 05-06)

Objection to authenticity pursuant to F.R.E. 901.

6.58    **US-51**

Flegenheimer Cargo Release Processing (US 07)

Objection to authenticity pursuant to F.R.E. 901.

6.59    **US-52**

APL Notice of Arrival (US 08)

No objection.

6.60    **US-53**

APL Shipment Update Alert (US 09)

No objection.

6.61 **US-54**

APL Demurrage Invoice (US 10)

No objection.

6.62 **US-55**

APL Cargo Availability Notification (US 11)

No objection.

6.63 **US-56**

Customs Entry (US 12)

Objection to authenticity pursuant to F.R.E. 901 and relevance pursuant to F.R.E. 401-403.

6.64 **US-57**

Delivery Order (US 13)

Objection to authenticity pursuant to F.R.E. 901 and relevance pursuant to F.R.E. 401-403.

6.65 **US-58**

APL Cargo Availability Notification (US 14)

No objection.

6.66 **US-59**

APL Trace Details Results (US 15-16)

Objection to relevance pursuant to F.R.E. 401-403.

6.67 **US-60**

Sterling Seafood Corp. Invoices (Dec. 12, 2005)

Objection to authenticity pursuant to F.R.E. 901, relevance pursuant to F.R.E. 401-403 and for failure to produce pursuant to Fed.R.Civ.P. 26 and 34.

**7.    The names and addresses of all witnesses a party intends to call to testify either in person, or by deposition, at the trial and the specialties of experts to be called as witnesses.**

    7.1    **Mohammed Zakir Hossain**
             Senior Vice President, Southern Foods USA, Inc.
             29-11 36th Avenue
             Astoria, NY  11106

             APL intends to rely upon Mr. Hossain's testimony as transcribed during the December 21, 2005 hearing before this Court.

    7.2    **Maryann Marilyn Kennedy**
             Former Finance Analyst and Head Freight Cashier
             American President Lines, Ltd.
             100 Central Avenue
             Building 40C
             South Kearny, NJ 07032

             APL intends to rely upon Ms. Kennedy's testimony as transcribed during the December 21, 2005 hearing before this Court.  Ms. Kennedy is deceased and cannot be recalled to provide additional testimony or rebuttal testimony.

    7.3    **Diane M. Terrien**
             Senior Manager, Documentation
             American President Lines, Ltd.
             116 Inverness Drive East
             Suite 400
             Englewood, Colorado  80112

             APL will present Ms. Terrien for live testimony that would otherwise have been provided by Ms. Kennedy.

    7.4    **Donald A. Daviner**
             Senior Manager, Customer Support
             American President Lines, Ltd.
             116 Inverness Drive East
             Suite 400
             Englewood, Colorado  80112

             APL intends to introduce the testimony of Mr. Daviner by deposition as transcribed on May 8, 2006.

7.5    **Terrence Rebeiro**
Document Customer Support Manager
APL Co. Pte Ltd
4/F Finlay House
Agrabad
Chittagong, Bangladesh

APL intends to introduce the testimony of Mr. Rebeiro by deposition as
transcribed on May 9, 2006 and May 10, 2006.

7.6    **Mohammed Abid Hossain**
Documentation Manager
APL Co. Pte Ltd
11/F, Land View Commercial Center
28 Gulshan North C/A Gulshan Circle 2
Dhaka 1212, Bangladesh

APL intends to introduce the testimony of Mr. Hossain by deposition as
transcribed on May 10, 2006.

7.7    **Shafi Ahmed**
Sales and Operations Manager
APL Co. Pte Ltd
Jiban Bima Bhaban
1st Floor, KDA Avenue
Khulna, Bangladesh

APL intends to introduce the testimony of Mr. Ahmed by deposition as
transcribed on May 11, 2006.

7.8    **Olivia Lopez**
Manager and Vice President of the International Department
Gold Bank
800 West 47th Street
Kansas City, MO  64112

APL intends to introduce the testimony of Ms. Lopez by deposition as
transcribed on May 15, 2006.

7.9    **S.K. Lee**
President
United Supply Co., Inc.
1805 Grand Boulevard, 5th Floor
Kansas City, MO 64121

United supply will present Mr. Lee for live testimony.

APL will present a Motion in Limine in advance of the Pretrial Conference to preclude Mr. Lee from testifying and United from offering evidence due to United's failure to make Mr. Lee and Peter Li available for depositions.

Except for purposes of impeachment or as a party admission, United objects to the use of transcripts from discovery depositions.  APL responds that United has deposed four witnesses from Bangladesh and one witness from Denver, Colorado, without objection from APL as to discovery depositions rather than trial depositions.  APL did not insist upon trial depositions as such would have been futile as United could simply recall each deponent as its own witness to obtain the desired discovery.  In addition, it is unduly burdensome and a waste of resources to force witnesses from overseas and other states to appear in person to respond to the same questions already posed, at great length and repetition, by United's counsel.  United's objection is in bad faith as it is for the sole purpose of increasing APL's costs of prosecuting this action.

**8.    A brief statement of what plaintiff intends to provide in support of plaintiff's claims including the details of the damages claimed, or of other relief sought, as of the date of preparation of the draft order.**

      **8.1    Proof in support of plaintiff's claims.**

APL intends to prove that Shampa prepared a bill of lading for the cargo, to be issued by APL, naming Shampa as the shipper, consigned to the order of Sonali Bank and naming United as notify party.  Shampa presented this bill to APL's Khulna office where it was reviewed by Shafi Ahmed.  Mr. Ahmed stamped and initialed this bill of lading on September 25, 2005, the date the cargo was loaded aboard ship.  Shampa took up the original bill of lading on the same date.  Shampa submitted this bill to Sonali Bank which

endorsed and submitted it to Gold Bank, along with the other documents that were required for payment under the letter of credit Gold Bank had issued for United's account to pay for the cargo.

On October 11 and 12, 2005, Sonali Bank requested Gold Bank to confirm payment.  On October 12, 2005, Gold Bank responded that payment had not been made due to discrepancies from the letter of credit requirements concerning a survey report and quality control report.  Gold Bank had previously written to United on October 6, 2005 to ask whether United would waive these discrepancies and permit payment to be made, but had not received a response.

On October 18 and 19, 2005, Sonali Bank requested that Gold Bank return the transaction documents, including the bill of lading.  Gold Bank contacted Peter Li[3] of United and was told not to return the documents because United was "in negotiations" with Shampa.  On October 24, 2005, Sonali Bank again requested that Gold Bank return the documents.

 Also on October 24, 2005, Mr. Ahmed received a copy of a letter from Shampa to Sonali Bank, requesting that a substitute bill of lading be issued in which the notify party was to be changed from United to Southern.  Mr. Ahmed informed Shampa that written instructions from Sonali Bank would be required.  That same date, Mr. Ahmed received a letter from Sonali Bank, requesting that a substitute bill of lading be issued naming Southern as notify party.  In addition, Sonali Bank undertook to return the previous bill of lading to APL.  Mr. Ahmed contacted the author of the letter from Sonali Bank and verified its authenticity.

---

[3] APL has no information as to Mr. Li's position with United as he has not been produced for a deposition, despite demand, at the time of submission of this Pretrial Order.

In the ordinary course of business, Mr. Ahmed discussed the request for a substitute bill of lading with Terence Rebeiro, Mohd. Abid Hossain and Monoar Hossain of APL's offices in Bangladesh.  These gentlemen came to the collective conclusion that, under controlling Bangladesh law, APL was required to comply with Sonali Bank's request as the bank had undertaken to return the prior bill of lading, thereby protecting APL should that prior bill of lading be fraudulently negotiated to another party.  Mr. Ahmed then presented Shampa with a blank bill of lading, which Shampa returned to APL the same day containing the essentially same information as the previous bill with the exception that Southern was substituted for United.  Mr. Ahmed stamped and initialed this bill of lading, and Shampa departed with the originals.

Mr. Ahmed then transmitted a copy of the substitute bill of lading to Mohd. Abid Hossain in APL's Dhaka office, as the Khulna office does not have the ability to enter information in APL's global computer database.  On October 25, 2005, Mr. Hossain undertook to substitute Southern for United as the notify party in this database, but was informed by APL's U.S. Customs Compliance office that the cargo had already cleared through U.S. Customs and that no further changes should be made in the database as it would alter the manifest submitted to U.S. Customs.  Lacking knowledge of U.S. Customs Law and APL's bill of lading processing practices in South Kearny, New Jersey, Mr. Hossain wrongly assumed that nothing further could be done about updating the database, that United would ignore any notices automatically generated by APL as it did not have a bill of lading and had not paid for the cargo (as made apparent by Sonali's letter), and that APL's Kearny office would notify and deliver the cargo to Southern upon presentation of an endorsed substitute bill of lading.

On October 27, 2005, Sonali Bank again requested that Gold Bank return the transaction documents. Again, Gold Bank contacted Peter Li at United, who represented that S.K. Lee instructed that the documents should not be returned due to the "negotiations" with Shampa.

Sonali Bank again requested the return of the documents on October 31, 2005. Gold Bank again contacted United, and Mr. Lee again instructed Gold Bank not to return the documents or it would "hamper" negotiations. That same day, Gold Bank responded to Sonali Bank stating that it had requested a waiver of the aforementioned discrepancies, but had not received United's approval. Gold Bank did not address Sonali's request for the return of the documents.

Also on October 31, 2005, Southern delivered the substitute bill of lading endorsed to it by Sonali Bank to APL's South Kearny facility. The freight cashier who processed this bill of lading updated the database to reflect receipt of an endorsed bill of lading, permitting the delivery of the cargo upon arrival. The computer system provided a "yes" or "no" option to indicate whether an endorsed bill of lading had been tendered, but it did not show who tendered it.

On November 15, 2005, the cargo arrived in South Kearny and the freight cashier reviewed the database to confirm an endorsed bill of lading had been received. Upon confirming receipt, the freight cashier provided delivery instructions to United, as it remained as the notify party in the database.

On November 18, 2005, United took the cargo from the terminal. When Southern inquired with APL a few days later regarding its cargo, the misdelivery was discovered and APL requested United to return the cargo. United refused.

On November 22, 2005, Sonali Bank wrote to Gold Bank and noted that Gold Bank had violated controlling law by failing to return the transaction documents as had been repeatedly requested. Sonali also wrote that Shampa had informed Sonali that United had taken possession of the cargo and, therefore, Sonali demanded payment. Gold Bank contacted United, who responded that no payment would be made and that the documents should be returned. Gold Bank crossed out its signature line stamp for endorsement to United, and by letter of the same date, returned the transaction documents to Sonali Bank, which thereupon returned the bill of lading to Mr. Ahmed. Mr. Ahmed sent the bill of lading to Mr. Hossain who forwarded them to the United States by reason of this litigation.

Contrary to United's contentions, there were never two different bills of lading "outstanding" or "in circulation." The initial bill of lading was always held in trust by Sonali Bank and Gold Bank. Therefore, it was not wrongful to issue the substitute bill of lading before APL physically received the initial bill of lading. The only reason the initial bill of lading was not returned to APL sooner was that United instructed Gold Bank to ignore Sonali Bank's instructions to return the bill for nonpayment. At the time United so instructed Gold Bank, United had no intention of paying for the cargo and had no agreement with Shampa to acquire the cargo without paying. At most, there were allegedly negotiations for such an agreement, according to what United told Gold Bank. United knew very well that at the same time these negotiations were allegedly transpiring, Shampa's bank, Sonali Bank, was repeatedly demanding the return of the initial bill of lading naming United as notify party.

**8.2    Damages sought and relief claimed.**

APL seeks damages in the amount of $176,800 plus interest, the amount claimed by Southern for the value of the cargo.   APL requests that it be authorized to draw this amount from the $200,000 line of credit posted by United to secure the release of the Cargo from APL's Rule D arrest, and to pay this sum over to Southern in full satisfaction of APL's obligations under the bill of lading Southern delivered to APL.

APL also requests damages in an amount representing attorneys' fees and costs for United's conversion of the Cargo and pursuant to Delaware's replevin statute, 10 <u>Del</u>. <u>C</u>. § 3905.

**9.    A brief statement of what the defendant intends to prove as a defense.**

APL issued a backdated second set of bills of lading without retrieving the first set.  This was a violation of its own standard operating procedures and the applicable law.

When it made the decision to issue the second set of bills, APL was aware of the fact that Shampa and Southern were both controlled by the very same individual, Amjad Hossain. There were further indications that the transaction between Shampa and Southern was a sham. Before it importuned APL to issue the second set of bills, Shampa asked APL to delay the Goods at Singapore, the port of transshipment, until the next vessel bound for the U.S. West Coast. Shampa also requested that APL not deliver the Goods to anyone not holding a bank-endorsed original bill of lading, except that if delivery was to be made to Southern, then a bank-endorsed original bill of lading would not be necessary.  Shampa had also ordered the goods diverted from Baltimore, their original destination, to Kearney, New Jersey. Despite the circumstances and APL's own policy against issuing a second set of bills of lading without first retrieving the first-

issued bills, APL's agents in Bangladesh complied with Shampa's request. Thereafter they failed to inform anyone in the APL organization outside Bangladesh that a second set of original bills had been issued.

A previous shipment of shrimp purchased by United from Shampa had in the meantime been rejected by the Food and Drug Administration. Shampa was obligated under the terms of its contract with United to refund United's payment in full within 7 days, but in lieu of this, Shampa and United agreed that the goods in question would be a substitution for the prior rejected shipment. United continued to receive various notifications from APL regarding the progress of the goods, ending in a notice that the goods were available for pick-up in Kearny, New Jersey.

After delivering the Goods to United and being subsequently informed by Southern that it too claimed a right to possess the goods, APL conducted an investigation and determined that the issuance of the second set of bills in Bangladesh was improper. APL nevertheless proceeded to obtain an ex parte warrant for the arrest of the shrimp, without informing the Court of either the existence of the first set of bills of lading in favor of United or the results of its own internal investigation. At the time of the arrest, the goods were stored inside the Burris refrigerated warehouse in Harrington, Delaware, having been unloaded from the shipping container over two weeks earlier. To accomplish the seizure, APL had the shrimp loaded into a new APL shipping container, which it then transported to its container yard in Kearney, New Jersey.

APL initially refused United's request to release of the goods upon the posting of security, thereby compelling United to meet its obligations to Albertons/Acme by procuring substitute shrimp at a cost of $209,622. APL's seizure of the shrimp also

resulted in lost profits of over $150,000, and required United to make concessions of approximately $600,000 in order to maintain its contract with Albertons/Acme. United has also incurred substantial legal fees and expenses as a direct result of APL's conduct in issuing the second set of bills and seizing the goods, for which sums APL is liable.

**10.    Statements by counter claimants or cross-claimants comparable to that required of plaintiff.**

United refers the Court to its statement as contained in paragraph 10.

**11.    Any amendments of the pleadings desired by any party with a statement whether it is unopposed or objected to, and if objected to, the grounds therefor.**

APL desires to amend its Verified Complaint against United to request punitive damages in an amount equal to APL's attorneys' fees and costs as a result of United's conversion of the Cargo and/or as permitted by Delaware's replevin statute, 10 Del. C. § 3905.

United opposes such an amendment on the basis of untimeliness and on futility in that APL as a matter of law cannot recover punitive damages from United.

APL responds that the proposed amendment is not untimely as it is permitted to be proposed by L. Civ. R. 16.4(d)(11). In addition, the recovery of punitive damages by APL has been posed as an issue of law to be litigated in paragraph 5 of this Pretrial Order.

12.     **A certification that two way communication has occurred between persons having authority in a good faith effort to explore the resolution of the controversy by settlement.**

The undersigned certify that they have communicated in good faith to explore the resolution of this controversy by settlement with the authority of the respective parties. These communications included discussions with Samuel I. Mok, Esquire, counsel for Southern, as Peter Hess, Esquire, has purportedly been discharged.

13.     **Any other matters which the parties deem appropriate.**

13.1    On April 17, 2006, Samuel I. Mok, Esquire, filed a Complaint in the Southern District of New York, Docket No. 06-2949 (HB), on behalf of "Southern Foods, Inc." and not the claimant herein Southern Foods USA, Inc.  This Complaint asserts causes of action against APL, United and Neptune Orient Lines Ltd., which is indirectly a parent company of APL, based upon the same transaction at issue before this Court and as claimed by claimant Southern Foods USA, Inc.

After receiving permission from the assigned District Judge, APL filed a Motion for an Order to Show Cause why the action should not be dismissed or, alternatively, transferred to the District of Delaware for consolidation with this action.  The Court has scheduled a show cause hearing for May 24, 2006, at 10:00 a.m.

13.2    Counsel for APL has inquired if Mr. Mok intended to participate in the preparation of this Pretrial Order.  Mr. Mok declined.  As a result of Mr. Mok's position, this Pretrial Order is submitted by counsel on behalf of APL and United, notwithstanding Southern's filing of Claim before this Court.

13.3    In light of Southern's failure to respond to or otherwise participate in discovery, United reserves the right to object to the admission of any evidence relating

to Southern's purported claim to the goods.  APL responds that the claim of Southern is highly relevant to the disposition of this matter and APL should not be punished for Southern's tactical decision to not participate in discovery.

**14.    This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.**

HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, PC

By:   /s/ Lynne M. Parker, Esq.
Lynne M. Parker, Esq. (No. 2811)
1201 N. Orange Street, Suite 730
Wilmington, DE  19801
Phone #: (302) 884-6700
Fax #: (302) 573-2507
lparker@hollsteinkeating.com

*Pro Hac Vice:*

HOLLSTEIN KEATING CATTEL
JOHNSON & GOLDSTEIN, PC

By: /s/ Edward V. Cattell, Jr., Esq.
Edward V. Cattell, Jr., Esq.
1201 N. Orange Street, Suite 730
Wilmington, DE  19801
Phone #: (302) 884-6700
Fax #: (302) 573-2507
ecattell@hollsteinkeating.com

HEALY & BAILLIE, LLP

By: /s/ Matthew H. James, Esq.
Matthew H. James, Esq.
61 Broadway
New York, NY  10006
Phone #: (212) 943-3980
Fax #: (212) 487-0131
mjames@healy.com

Attorneys for Plaintiff APL CO. PTE LTD

PALMER BEIZUP & HENDERSON LLP

By: /s/ Michael B. McCauley, Esq.
Michael B. McCauley, Esq. (No. 2416)
1223 Foulk Road
Wilmington, DE  19803
Phone #: (302) 594-0895
Fax #: (302) 478-7625
mmccauley@pbh.com

Attorneys for defendant UNITED SUPPLY CO., INC.

SO ORDERED:

_____
HON. SUE L. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE